Case numbers 22-6080 and 23-5353, Rhonda Olenik v. Ohio Casualty Insurance Company, et al. Oral argument not to exceed 15 minutes to be shared by the plaintiffs, 15 minutes for the defendant. Jerome Prather for the appellate, you may proceed. Good afternoon, and may it please the court. My name is Jay Prather. I am here today on behalf of Edward Vanik and Jody Hodges, who are joint administrators of the estate of their 11-year-old son, Brody, who died in this automobile collision. The basis of our appeal is that the district court erred because its decision is incompatible with the plain language of the UIM insurance policy provision relating to substitute autos. But that error is obvious. The real issue for this court to decide is whether this and other federal courts, including the district court, are bound to follow a clearly erroneous but seemingly on-point decision of an intermediate state appellate court when the state's highest court has published rules of construction of insurance contracts that require a different result. Are you conceding that the Kentucky Court of Appeals decision is adverse to your situation, or can you distinguish that case? Thank you, Judge Moore. I would not concede that. I think that if we get to that question of the underlying facts, and you have to look at the facts, and I do believe that there are clearly distinguishable facts in the underlying circumstances that gave rise to the estate of Turner case, particularly relating to whether the other vehicles in that situation were actually factually unavailable. The direct evidence in that case was that they were not. There were affidavits to that effect. There is also a clear and obvious motive of personal motivation to use a personal automobile rather than a substitute automobile, or rather than a company automobile that had nothing to do with the company automobiles potentially being out of service in that case. And that was that this reporter would have had to go an hour and a half out of his way on a less than 90-minute journey in order to pick up a company vehicle to cover this breaking story. So I think there are factual distinctions there. So can you focus on whether there was a temporary substitute here, given that Ms. Vanek was regularly using her car for business purposes? Why is this a temporary substitute? Yes, Your Honor, and I believe that the facts show that it was clearly a temporary substitute on the day of the collision. I will concede that the evidence is that Ms. Vanek used her personal vehicle to do office errands, to transport people to job sites on a regular basis, the types of things you would use a sedan to do. However, interpreting an insurance policy under the law that we can find of this circuit and other places requires looking at the use at the time of the incident in question, in this case at the time of the collision. You have to look at the purpose that she was driving her vehicle when this collision happened. There's not a lot of cases on this. I agree with you there might be a dispute of fact about whether, if we think it is tied to the specific trip, there might be a dispute of fact about whether she would have used her Kia to pick up the paint or would have used the truck. But why should that be the definition of what we are thinking about when we think of the word temporary? I looked at CALCH on insurance and it has a section. It's section 117 colon 79 on temporary substitutes, and it does say, Thus, there will be no coverage under the temporary substitute clause when the use of an automobile is not to be temporary, but regular and permanent, such as when an automobile is furnished to be insured by his or her employer for regular use. Now, it seems, I think you just conceded that she regularly used this Kia for work-related purposes. So under that language that I just read to you, don't you think it would not be considered a temporary substitute because it was regularly used for work purposes? I don't think it would be, Your Honor, at the time that this incident happened. In this court's own precedent, I would point to the FL Aerospace case, which happens to also be the case where this court did exactly what we're asking it to do in Michigan. It overlooked an on-point decision in the Michigan Court of Appeals and looked at what it predicted the Michigan Supreme Court would do in a similar circumstance, but it also made clear this court in the FL Aerospace case made clear that the prior habits of the insured are irrelevant to interpreting the policy as it relates to the covered incident. That's what this court's precedent says. So all I'm trying to do is determine the natural meaning of the phrase temporary substitute, and there is an argument. Your friend on the other side says if the car is not like a rental for a short period, if the car is one that she regularly uses for work purposes, it wouldn't meet the definition of temporary, and I'm trying to figure out what the best response to that is. I think the response to that under the facts of this case is it was a temporary replacement for its specific use. She was going to pick up multiple commercial gallons of commercial paint. The evidence is, and there's no real dispute to this evidence, there's certainly no witness disputing the testimony, that more likely than not, had the company's F-250 been available at the time on this day, that she would have driven that, that that was her habit to drive that to pick up paint and supplies. But it was not. I completely agree with your dispute of facts. I completely agree with you that if that is the test, then you may be correct that we have to remand. But what is the interpretation of temporary substitute that leads you to that specific occurrence test? So what is the interpretation of the insurance contract that thinks that we should look at just the specific occurrence? The use of the temporary substitute, I think that's a compound word. I think that the plain language requires that her vehicle is temporarily substituting for another vehicle. We know from the evidence that the F-250 was in the shop for about two weeks, about a week before this wreck, about a week afterwards for an engine repair. The engine was not working. She was temporarily substituting her personal vehicle for a use that usually only the F-250 would have been used for. The best case on this is a case that's in our brief. And cited by the defendants in their footnote, I think it's a case that's in their footnote 58, the Stonehawker v. Golf Insurance case from Montana, where it says that the temporary use analysis is tied to the specific use at the time. So I would concede that if this wreck had happened while Ms. Vanek was taking the mail or paying the electric bill, the things that she ordinarily used her vehicle for, for work purposes, then we probably wouldn't be here. Then it probably would not be a temporary substitute as a compound word. But under the specific circumstances of this case, the temporary substitute is that, yes, she was using her vehicle as a substitute during the two-week period. She died halfway through that period. But for the week or so prior, for any use that she otherwise would have used the F-250 for. And I think that's consistent with what this Court has said and consistent with what courts have said in the few other cases, such as the Stonehawker case from Montana that we found. I believe my time is up. Thank you. May it please the Court. I'm Lance Turner and I represent Rondo Linnick, who is the administrator of the estate of Donna Vanek. And first, Judge Moore, I'd like to address your question on the distinguishment from Turner. In Turner, they never produced any evidence that there was a vehicle that is out of service due to breakdown, repair, or something like that. Under our definition of the strict plain meaning of the case, Turner would not recover because it says that it must be a temporary substitute for a covered auto that was out of service for breakdown, repair, or servicing. But there is this awkwardness in Turner where the Court says there must be some evidence to show that no company vehicle was available for her husband because of breakdown. I believe two-fold, Judge. Number one, that is dicta. That it wasn't necessary to the determination of the outcome of whether there's coverage or not. It's a comment that is made really without any depth or any citation for where that came from. It also invented a term that is not in the policy. It says that she must show that there's no vehicle available. That's not in the policy. It's not defined. It's not. The policy requires a covered auto to be out of service. And it's the covered auto in the policy, right? Yes, it is singular. And the Court there created and added language to the policy that is contrary to Kemper. Kemper says we do not add to, we do not take away from the language of the policy. We do a plain reading of the policy. And under that, it says that there has to be a covered auto, singular, out of service. And that's undisputed in this case, that there was a covered auto. It was out of service. And then the Court of Turner adds these requirements that it has to be no other vehicle available. And available is not defined in the policy, not used in the policy. It's also not defined by this Court. So in Turner, I think it's undisputed that there were other vehicles available that were not being used. But Turner doesn't address what if all of those vehicles were being used? What if all the TV reporters and all the employees of that TV station were using all the company vehicles? They were functional. They weren't out of service, but they were being used. So why do you think it's dicta, though? Sometimes courts can adopt a standard that is fact-specific to that case. But other times, courts adopt legal rules that go broader than the case. But as long as the legal rule is necessary to decide the case, it still would qualify as a holding. So I agree with you that it's not particularly well-reasoned. But it does seem to suggest a test that is not conducive with your position here. Well, often dicta is a word that's been used throughout my career, but I don't guess I had ever really looked up the deposition until I was preparing for this. And in Black's Law Dictionary, it refers to dictum as remarks made by a judge in pronouncing an opinion upon an application of law not necessary to the essential determination of the case. It further defined dicta as opinions judges would not embody. They would not embody the resolution or the determination by the court. And it's made without argument and without full consideration of the point. And I think that's exactly what happened here. They could have said, Mr. Turner's estate did not produce evidence that there was a covered auto out of service due to breakdown. And that's all they needed to do. And I agree under our reading of the plain meaning of this policy, Turner would not have recovered. They then added to the policy that there had to be no other company vehicles available. And then they don't define what available is because here the difference between this case and Turner is, in Turner there were vehicles available. Here there was not, at least not that were not being used. So under the interpretation of the lower court and applying it to these facts where we had another covered auto that wasn't broke down but it was being used for the business purposes and was being used there at the site, they would have had to shut down their operation to go somewhere else to get the paint in that truck and would have been sitting there. Are we to say that large companies that may have a hundred vehicles in three different states and they're all covered under the same policy, do every one of those have to be broke down before the substitute provision comes into play? Here it's different than Turner because there was one not broke down but it was being used. And there was no other vehicles available. And that's the ambiguity of availability in the Turner case. How do you deal with the temporary substitute issue when she was regularly using the car? First of all, the lower court did not rule on that matter. She actually addressed and said that there was a question of fact as to that. Once again, temporary in that regard, if we look at the Stonehawker case and then if we look at Judge Moore, the definition that he used in Couch, we now have two reasonable interpretations of the definition of temporary. And the Kentucky courts and Kentucky law shows that when you have two reasonable interpretations, you're supposed to err on the side of providing coverage. I see my time's up. Thank you. Good afternoon. I'm Kendrick Wells on behalf of the Appley, Ohio Casualty Insurance Company. May it please the court, if the word temporary is to mean anything, it can't mean regularly, all the time in the business. And with due respect to Appellant's counsel, I believe he understated the evidence in the record regarding Ms. VanEck's business use of the vehicle. But wasn't there evidence that she would have likely used the F-250 to carry these big containers of paint? But for the breakdown of the Ford F-250, she had to use her own vehicle. I understand that they're a competing fact. Yes. That doesn't create a fact issue here because those statements, for one, they're speculation and are not admissible. But even if they're given due weight, they only go to the question of her intent on that day, as Judge Murphy said, for that specific trip. Why shouldn't that be the test? On that day, the Ford F-250 was not available because of breakdown. The other truck was not available because it was being used and used by others. And she needed to get the paint gallons, 20 gallons of paint. So she used, for temporary reasons, her car that day. Well, we've cited to the Johnson versus Florests mutual case where Judge Wilhoyt discusses the term and applies it in facts where one of the business owners had used a non-listed vehicle four to six times in the year before to do the same thing that she was doing at the time of the accident. So that's a district court opinion with persuasive value only, not binding on us. Correct. But, Your Honor, the same use principle that the appellants rely on cuts both ways as well. In the cases they've cited for the idea that when a vehicle is used for the same use as an out-of-service covered auto, it's a substitute, those cases also rely on the facts that where they found coverage, that substitute vehicle had not been used in that way before. For example, the Wisconsin case, Lewis v. Bradley, that's where the named insured used his father's farm truck to go to church and to go on an afternoon pleasure ride when his covered Plymouth had broken down. And the court noted that the named insured had never used the farm truck before for pleasure purposes and it was not a, quote, alternative car because it, in fact, had not been used in such. Here, it's clear from the facts that the Kia was an alternative car for the business. It was not simply for mail runs and administrative tasks. The testimony is clear. It was used to deliver supplies, including paint. It had a bucket of paint. Counsel, if we find that there's a material question of fact about that, does that mean that it counts as a temporary substitute? If we disagree, looking at the record and say, well, there's a question about whether when you had 20 gallons of paint, right, whether she usually would use the Kia or go and get the truck. If we say, well, a jury should decide that question, does that mean you lose? No, because this was an additional business vehicle. In fact, this But it's not a covered auto under the policy. That's right. In fact, it's important that for this coverage, it only applies to specific covered autos that symbol description 7. Right, and when something is serving as a temporary substitute. Yes, and they could have purchased coverage that symbol description 9, for example, that covers non-company owned vehicles when employees are using them for business purposes. They chose not to insure the Kia and not to buy that insurance. Well, luckily, we don't have to contemplate other policies, too. But focusing on what a temporary substitute is, we're clear here that temporary is modifying substitute, right? So it doesn't have to be that she just drove this car temporarily. It's just that it temporarily served as a substitute. Is that correct? Would you agree that temporary modifies substitute? Yes, that's correct. All right. So we have to ask, is this just for like a short period temporary serving as a substitute for something else? Is that the inquiry that I should ask? I think you have to look at the historical use of the vehicle for the example. All right, so looking at that historical use, I'm asking, well, given what tasks she would do with the Kia versus what tasks she would do with the truck, this is temporarily, just for a short time, something she'd probably do with the truck. So it's a substitute. I think under these facts, there's no way to get there other than to speculate. You're going back to the facts, which, you know, here we've got a record with people saying different things, and we don't decide that stuff. That stuff goes to the jury. As to her historical use, we don't have people saying different things. The speculation about the amount of paint, that comes from her brother, who is not a fact witness, who doesn't have personal knowledge of those facts. So there's nothing in the record anywhere that she may have taken a truck to move a large quantity of paint? Nothing anywhere? The testimony from Mr. Perkins, who is her fiancé and the project manager and the one who sent her on this particular errand. I understand there may be specific contrary testimony, but you're telling me there's nothing in the record that supports that she may have, that in the past she has ever moved a large quantity of paint in the truck? She sometimes used the trucks to get paint. So sometimes she used the trucks to get paint, maybe a large quantity of paint because it doesn't fit super well in the Kia. For a short period of time using the Kia, could it be a substitute for using the truck? No, because she's used the Kia before to get paint. We're talking about four buckets of paint. Well, certainly the car is not used just temporarily. I'm with you there. The car is not used temporarily. She uses it all the time. But we have to figure out if it's a temporary substitute for something else. The testimony is that she typically used the Kia to get paint, even though she did sometimes use the company-owned trucks. I'll also point out that... That's fine. I guess I'm looking for an interpretation of the language, not going back to the facts in the record, because I think your friends on the other side would say there's at least enough in the record to throw to a jury. So I'm asking about the meanings of the word temporary and substitute. Well, and maybe I'm... Can I just interject? Suppose I believe that there is a dispute of fact about whether the truck... I think that a reasonable jury could find that the truck would have been used on this specific occasion. Now, you have contrary evidence, but that's for the jury. Just assume that. Assume that's my view of the record here. Do you still think that the Kia would not qualify as a temporary substitute, even if I think she would have used the truck on this specific occasion, or at least a jury could reasonably find that? I do, Your Honor, because at this point we're talking about a preference. When they insured two vehicles, they had a third company vehicle... Okay, so that's your position. And so is it because of the word temporary or is it because of the word substitute? I think under ordinary English, if she would have used the truck, but because the truck was in the shop, she used the Kia, most people would say it qualifies as a substitute. Would you agree with that? Yes, that gets you to the substitute element. Okay, so then temporary is what's doing all the work for you on this theory. On the issue of temporary that we're talking about, yes. The relevance of her historical use of the car goes to the temporary. I think what Judge Blumkatz was getting at was going to be my counter to what Couch says. Couch says temporary use, and so I agree that it wasn't a temporary use, but in this policy, temporary modifies substitute. So why wouldn't we think it is a temporary substitute? And the word temporary is just dealing with the hypo of you totaled a car. Suppose you just total a car so you have a new car. The word temporary makes clear that you can't have a permanent substitute. So you actually have to go back to the insurer and insure the new car because the other one is outdated. That's what temporary is doing. It's just designed to make clear that the substitute cannot be permanent. But I don't think we have that fact pattern here because the truck was going to come back, wasn't it? Well, there's a replacement auto coverage that's not an issue here because it's undisputed. This was not a replacement situation. I don't think that's one theory for what the word temporary is doing. It's designed to make clear that if the substitute is going to be continuously used in place of the vehicle that has been destroyed or is in the shop, then it would not qualify as a temporary substitute. But that's not these facts because there's no evidence that the truck was totally destroyed. And doesn't that make sense given the language which is the covered auto must be out of service because of its breakdown repair servicing loss or destruction. So the purpose of saying temporary substitute would be if the Ford 250 was destroyed, then you couldn't say there should be coverage of the Kia in perpetuity because even though the Kia hypothetically would be substituting for the destroyed Ford, it would not be temporary. It would be a permanent substitute. And there the insurance company obviously wants to have premiums paid, understanding that going forward the Kia would be being used, not the Ford. Yes, there's other language in the policy, Judge, that if it's actually replacing a covered vehicle, it's covered for a certain time and they have to notify the company. Here the interpretation that says temporary is any time a covered vehicle is out of service, even a vehicle that you're using so regularly that the company is paying for its gas and tires and oil changes becomes a temporary substitute in that one instance. The problem with that interpretation is it creates this floating temporary substitute coverage. But you drafted the insurance policy, so you could have been more precise if you had wished. Obviously you're the lawyer now, not the insurance company, but you're representing the insurance company which was the drafter of the policy. So any ambiguity should be construed against the drafter. That's accurate, Judge. This is a part of the insuring agreement and not an exclusion. So the appellants have the burden to show that it applies to them, but it's also a fairly common formulation of this language. And in the other cases that have looked at this language, the few that have dealt with this temporary element, I'm not aware of any that have applied it in the sense that any single use, if we can establish that the intent of the person was to use it for that covered auto, it becomes a covered auto for substitute coverage. Can I ask you a scenario that's a little bit different from here? So just indulge me for a second. Say that there's another coworker named Bob. And Bob often gets the paint and does lots of other stuff too, and he's got to run out and get this 20 gallons of paint. But the truck's in the shop and he asks the plaintiff here, you know, hey, can I borrow your Kia to go get the paint? And then tragically there's an accident and Bob passes. Is the Kia a temporary substitute then? No, because the business is using the vehicle, and the business is the policyholder. They're the ones insuring this vehicle. This is additional optional coverage that the business has purchased. In this case, there was another employee, for example, Mr. Rivera, who was on the same job site with his own personal vehicle that he used to transport workers. That was also not a listed vehicle. Would that be a temporary substitute for the F-250? The owner, Ms. Cowan, testified that she uses her personal F-250 sometimes to transport paint. And equipment and employees. Is her truck a temporary substitute whenever one of the two covered autos happens to be out? And the testimony was they were often out of service. So this becomes this umbrella of floating coverage for several vehicles that the business is regularly using, but they're not insuring. Can I switch? I know your yellow light is on, so I want to give you a chance to talk about the primary argument that the district court accepted. I'm curious, is it really the insurer's position that if it's a large corporation that has 20 vehicles and assigned 20 different employees, if one of those employees has his or her car in the shop and that employee uses a personal car that day, that that would not qualify as a covered vehicle because the 19 other vehicles used by the 19 other employees are still in service and being used by them? Yes, according to Turner. Setting aside Turner for a moment, which I find ambiguous, where in the language of the policy do you have a textual argument for that interpretation or is it solely based on Turner? Well, it goes to the interpretation of the word substitute in the context of the provision. The appellant's argument is that the district court added language, but what they're focused on is the singular tense of some of the words in the provision. And the provision is the same whether there's one covered auto or several covered autos. What the court in Turner was addressing, which I don't believe any of the other cited cases specifically address, is how do you establish that it's a substitute when you have more than one covered auto? I think most people would say in my hypothetical that the employee was using the personal car as a substitute. I don't see any plain language reading of that phrase that would require for the word substitute to only mean if the other 19 covered autos are also out. I guess I'm not understanding that interpretation. Well, there's... So is it your view that for large corporations this provision is meaningless? Because, I mean, if a large corporation has lots of covered vehicles, what are the chances all of the vehicles are going to be in the shop at the same exact time? That's a question that's certainly not under the facts of this case, but... You should probably let your large customers know that this provision is not going to cover them, if that's really your interpretation. I find the interpretation quite absurd. We're also talking about when they have these specifically described autos covered. So the hypo is like there's 20 or so autos covered. I don't know how common this is. Maybe it's not that common. Maybe that's your response. But I would think that large corporations might have lots of covered vehicles. Yes, but there is an issue when you have, say, a fleet of covered vehicles. Your hypothetical assumes that each vehicle is assigned out. And I'll also note in Turner, some of the facts that were suggested, I believe, are not in the opinion. We don't actually know what all of the 10 fleet vehicles were doing on the day of the accident. But your position is that all the covered autos have to be out of service because of breakdown, repair, servicing, loss, or destruction, no matter how many covered autos there are, in order for there to be a temporary substitute. Correct. In order for there to be a substitute. That doesn't address the temporary element which we talked about. Right, I understand. In order for there to be a substitute, even though it says anyone occupying a covered auto or a temporary substitute for a covered auto, the covered auto must be out of service. You say all the covered autos must be out of service. So you're adding the word all in there. You're trying to determine under the language if the purported substitute is a substitute for that particular auto, that the covered auto that's out of service. It would seem to me that a plain reading of that coverage is that if the covered auto is in the shop for repairs, someone who is legitimately driving a substitute for the covered auto should be covered. Even if there are 10 other, or 19 other, as in Judge Murphy's hypo, even if there are 19 other vehicles that are not in the shop, it would seem that the person who truly has a temporary substitute vehicle that they are using for this one day that the car is in the shop should be covered. And you're denying that plain reading, as I understand it. I understand that reading, Your Honor, but that's not what Kentucky law says.  So you go back to Turner. Yes. But if we didn't have Turner, is that what your understanding of the plain meaning of this provision is? If we didn't have Turner, it would be a closer case. But the court doesn't need... Have you ever taken this position in other states? I don't know how broad Ohio casualty is. I've not done a survey, Your Honor, but I'm not aware of any specific case addressing this specific issue in a similar context other than Turner. A side question. How did Ohio casualty get its name if it is headquartered and incorporated in other states? Why is it called Ohio casualty? I think it's a legacy brand name, Your Honor. There's a lot of... So it originated in Ohio, you think? I think that's a safe assumption. I realize this is totally extraneous, but you do have three Ohio judges here. It is interesting. Well, we've taken you well beyond your time. Thank you. Thank you. Your Honors, we need not look at district court cases because this court in Planned Parenthood v. DeWine and the Supreme Court in West v. AT&T says that the Kentucky Supreme Court is the final arbiter of Kentucky law. Temporary is an undefined term in this insurance policy. If it creates an ambiguity what temporary means, then Kentucky law undisputedly compels the conclusion that ambiguous terms are construed against the insurer and in favor of the insured. And if there is any question, which it sounds like there is today, about what temporary means in this case, because Ohio casualty chose not to define it in this provision, then it must be construed against them and there must be coverage. As to Judge Murphy's question of whether this has come up in other states, this is a common provision. It's one of those provisions that's sold and copied by a lot of insurance companies, and it has been interpreted. We cited six different states that have interpreted this provision, and none of them interpreted it the way that the Court of Appeals did in the state of Turner. In every one of those, it was interpreted to me that only one vehicle needed to be out of service. We could not find another – those are the six cases we could find interpreting this precise provision. We found none that followed the – quite frankly, as Judge Murphy or Judge Moore pointed out, the absurd result that all vehicles covered under the policy must be out of service before anyone can be a temporary substitute. I don't think that can be the law. That is contrary to also the Kentucky Supreme Court in Kemper National Insurance v. Heaven Hill Distilleries, where it says that where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written. That's exactly as I think the Court understands, that we have a clear and unambiguous policy here, but for the interpretation problems that are added by the state of Turner that would lead to this absurd result. If we do as this Court said it should do in 1990 in the FL Aerospace case, and in the interpretation of an insurance policy, we look at the rules of the principles of construction promulgated by the state's highest court, as this court did to Michigan and FL Aerospace, then we must look to what the Kentucky Supreme Court has said in Kemper. Kemper says you cannot disregard words and you cannot add words. And the only way to get to the result that the district court did, that a state of Turner did, and that Ohio Casualty would have this court take is to replace the words the and its with the words all and their in the policy. You must say all vehicles are out of service before there can be any temporary substitute. Can I ask just a pragmatic question? So as I understand it, I think the plaintiff's got other insurance already. Is this just a choice of insurance question or does this particular insurance add additional coverage on top of the coverage that has already been obtained from either the negligent driver or the personal policy? My client, which is a state of Brody, did not have any other coverage available. There is some Indiana policy. I wasn't involved with the trial court. I believe it was a question of Indiana law as to any coverage. But there ultimately was no other UIO coverage. There is liability coverage, obviously, that came from the vehicle that caused this wreck and hurt our clients and several others. But in terms of UIO coverage, as for my client, there is no other UIO coverage. So the defendant's coverage didn't make the plaintiff's whole or the tortfeasor's coverage? Correct. The tortfeasor had a commercial policy. It had significant coverage. There were multiple deaths, not just in our vehicle, as a result of this collision. So that policy was spread very thin. There has been no dispute that the plaintiffs were not made whole in this case, given the death of a young child and a multiple-party split of a commercial policy on the delivery vehicle that caused this collision. I think my time is up. Thank you. Thank you all for your argument. The case will be submitted.